Bertie v Norman (2024 NY Slip Op 50293(U))

[*1]

Bertie v Norman

2024 NY Slip Op 50293(U)

Decided on March 20, 2024

Civil Court Of The City Of New York, Kings County

Jimenez, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on March 20, 2024
Civil Court of the City of New York, Kings County

Calvin Bertie, Petitioner,

against
Theodora Norman, KEVIN NORMAN, SHANIQUA NORMAN, ERIC NORMAN, TAMARA BROWN, JOHN DOE and JANE DOE, Respondents.

Index No. 325905-22

Yvette Dudley Law Group P.C.
Attn: Yvette Vera Dudley, Esq.
219-03 Merrick Boulevard
2nd Floor
Springfield Gardens, New York 11413
yvetted@dudleylawnyc.com
Attorneys for Petitioner — Calvin Bertie
Brooklyn Legal Services Corporation A
Attn: Jack Underwood, Esq.
1471 Fulton Street
Brooklyn, New York 11216
junderwood@bka.org
Attorney for Respondent — Theodora Norman

Sergio Jimenez, J.

This holdover proceeding seeks recovery of the property at 706 Sheffield Avenue, Apartment 1R, in Brooklyn, New York 11207 as an end-of-lease holdover pursuant an RPL §226-c 90 day notice. This proceeding was transferred from the resolution part to the trial part in September of 2023. The court conducted a hearing on January 8, 2024, and the trial was concluded on February 7, 2024 by submission of post-trial memoranda. The court then reserved decision.
Hearing
The parties stipulated to various evidences prior to commencement of the hearing. Specifically, the parties consented to the entry of P1 (certified deed), P2 (NYCHA letter), P3 (Lease agreement) as well as Rb1-3 (DOB violations), Rc1-2 (violation status printouts), Rd1-2 (Violation status, write-up and certificate of correction), Re1-2 (violation status and write-up), Rf1-2 (violation status and write-up), Rg1-2 (violation status and write-up) and Ri1-2 (vacate orders and records). In support of their case-in-chief, the petitioner called Calvin Bertie who authenticated P4 (rent ledger), P5 (access letter), P6 (90-day notice) and P7 (the Certificate of Occupancy). The bulk of the witness' testimony was focused on the Section 8 subsidy being terminated as well as his various efforts at obtaining access. Of particular note, Mr. Bertie testified that he had never had anyone living in the basement.
The interposed answer set out six affirmative defenses: de facto rent stabilization and failure to correctly plead the regulatory status, failure to serve NYCHA pursuant the Williams consent decree, failure to register with DHPD, breach of warranty of habitability, laches and waiver of ability to maintain the proceeding based on acceptance of rent. In response, the respondent testified on her own behalf. Ms. Theodora Norman authenticated Rh 1-4 (photos) of the premises. She testified as to the conditions in the apartment as well as her belief as to there being two separate apartments in the basement previously. She testified that the petitioner's sister lived in one and that an "African" couple lived in the rear basement. On cross-examination, she admitted that she did not know what the names of the occupants who had lived in the basement.
Discussion
The Second Department has been quite clear with regard to situations where units have been added bringing the total to six or more in terms of rent stabilization (Rashid v. Cancel, 9 Misc 3d 130[A][App Term 2d Dept 2nd and 11th Jud Dists 2005]; Beverly Holding NY, LLC v. Blackwood, 63 Misc 3d 160[A][App Term 2d Dept 2019]; 246 Leonard Realty LLC v. Phoa, 65 Misc 3d 145[A][App Term 2d Dept 2019]; Henry v. Kingsberry, 66 Misc 3d 143[A][App Term 2d Dept 2020]; 124 Meserole, LLC v. Recko, 55 Misc 3d 146[A][App Term 2d Dept 2nd, 11th and 13th Jud Dists 2017]; Ortiz v. Sohngen, 56 Misc 3d 19 [App Term 2d Dept 2nd, 11th and 13th Jud Dists 2017]; Robrish v. Watson, 48 Misc 3d 143[A][App Term 2d Dept 2nd, 11th and 13th Jud Dists 2015] ;Joe Lebnan, LLC v. Oliva, 39 Misc 3d 31 [App Term 2d Dept 2nd, 11th and 13th Jud Dists 2013] ;111 Kingsland Avenue, LLC v. Volchanin, 71 Misc 3d 135[A][App Term 2d Dept 2nd, 11th and 13th Jud Dists 2021]. Even in cases where the apartments are not legal units, the Appellate Term has found that units are subject to rent stabilization. Id. The courts have discussed more in-depth as to what type of unit constitutes a "housing accommodation" for the purposes of de facto rent stabilization (Gracecor Realty Co., Inc. v. Hargrove, 90 NY2d 350 [1997]; 124 Meserole, LLC v. Recko, 55 Misc 3d 146[A][App Term 2d Dept 2nd, 11th and 13th [*2]Jud Dists 2017], ]; Robrish v. Watson, 48 Misc 3d 143[A][App Term 2d Dept 2nd, 11th and 13th Jud Dists 2015]). The definition is laid out in the Rent Stabilization Code which defines the accommodation as "that part of any building or structure, occupied or intended to be occupied by one or more individuals as a residence, home, dweilling unit or apartment, and all services, privileges, furnishings, futniture and facilities supplied in connection with the occupation thereof" (9 NYCRR 2520.6[a]). Factors to be considered include length of time, limitations imposed by the owner, intent of the occupant, physical access [including the provision of a key], the existence of bathrooms, kitchens.
Here, several facts are not in dispute. There are currently four legal units in the building. Petitioner owns the building. The building was constructed prior to 1974. The respondent is in possession of apartment 1R, one of the legal units on the first floor. The factual question before the court is whether there were ever two units in the basement therefore creating a de facto rent stabilized building for all of the existing units.
Given the extent that the testimony was equal in its credibility and did not necessarily preponderate over the other, it is the party who bears the burden who will have their application denied (Rinaldi & Sons, Inc. v. Wells Fargo Alarm Service, Inc., 39 NY2d 191 [1976]). Here, once the rent stabilization status has been properly called into question, as respondent has, the petitioner has the burden of proof to prove the unregulated nature of the subject premises (see Pineda v. Irwin, 40 Misc 3d 5 [App Term, 1st Dept 2013]). As the conflicting testimony does not preponderate over the other, the court must analyze the surrounding documentation and evidences presented. The bulk of the evidence presented by the respondent are various violations issued by the New York City Department of Buildings. Namely three (3) violations numbered 34805288H, 34817403M and 34846137L, which state clearly that there were two (2) Class "A" apartments in the cellar. Specifically, Rb2 states that the cellar was converted to 2 apartments with "kitchens, bathroom, bedroom + living room." In reaching its determination, the court does not consider any of the violations which were dismissed. The court also declines to consider any of the pictures provided by respondent. This court, being a statutory court and not one of equity, is tied to administrative findings under the legal theory of stare decisis, in that it is generally inappropriate for a summary proceeding to provide de novo review of an administrative agency's determination, especially when matters under consideration are peculiarly within the expertise of the agency (Capers v. Guiliani, 253 AD2d 630 [1st Dept 1998]). This is analogous to how DHPD has jurisdiction to determine succession rights in Mitchell-Lama housing (Lindsay Park Housing Corp. v. Grant, 190 Misc 2d 777 [App Term 2d Dept 2001]; Cadman Towers, Inc. v. Kaplan, 54 Misc 3d 140[A][App Term 2d Dept 2nd, 11th and 13th Jud Dists 2017]). The appropriate channel for challenging final administrative findings would be to file an Article 78, should a party disagree with the determination (CPLR §7801[1]; Matter of Greenberg v. Assessor of Town of Scarsdale, 121 AD3d 986 [2d Dept 2014]).
As there were agency determinations that there were two illegal units in the basement, the court exercises its discretion to adopt that finding (Ortiz v. Sohngen, 56 Misc 3d 19 [App Term 2d Dept 2d, 11th and 13th Jud Dists, 2017]). Of note, the violations were not discharged ab inicio, but rather were settled, a fine was paid and the use was undisputedly discontinued. In other words, the units existed. There was no agency determination that the violations were issued incorrectly. However, under this particular set of facts, the court need not consider the DOB findings as binding, as it would not change the outcome as it is unrebutted relevant persuasive evidence of the existence of the two Class "A" housing accommodations.
Further, while not dispositive but of particular importance, there was no testimony given as [*3]to the lack of intentionality or knowledge, either actual or constructive, of the petitioner in the existence and maintenance of these units. If evidence had been presented that the owner did not know or could not have known about these changes such evidence could lead to a different conclusion. Here, the court need not engage in counterfactual as no such evidence was provided, either testimonial or documentary to support that position. The court finds petitioner's blanket denial to not defeat the defense presented.[FN1]

The court finds that there were two basement units at some point in time. As such, the units that existed at that time all fall under the purview of rent stabilization (Rashid v. Cancel, 9 Misc 3d 130[A][App Term 2d Dept 2nd and 11th Jud Dists 2005]). Since the petitioner has failed to plead the correct rent regulatory status and provide the proper statutory reasons for terminating a tenancy, this proceeding may not be maintained.
Conclusion
For the above reasons, the petition is dismissed. The court dismisses all of respondent's other defenses as moot and are not reached. Respondent may seek a judgment of dismissal through the clerk's office. The parties may pick up their exhibits in Part O, but if it has not been done so within thirty (30) days from the date of this order, they will be discarded according to court directives. This constitutes the decision and order of the court.
Dated: March 20, 2024
Brooklyn, New York
Sergio Jimenez, JHC

Footnotes

Footnote 1:While the court appreciates the inherent difficulty in proving a negative, the findings by an independent neutral third-party government agency should not be lightly cast aside, especially when the instant party had an opportunity to litigate in that forum.